# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STEPHEN BUSHANSKY, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| STARWOOD WAYPOINT HOMES, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) CLASS ACTION ) ) |
| STARWOOD WAYPOINT HOMES PARTNERSHIP, L.P., 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) ) |
| FREDERICK C. TUOMI, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| BARRY S. STERNLICHT, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| THOMAS M. BOWERS, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| RICHARD D. BRONSON, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| MICHAEL D. FASCITELLI, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| RENEE LEWIS GLOVER, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| JEFFREY E. KELTER, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| THOMAS W. KNAPP, 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) ) ) |
| and | ) ) |

1

| | |
|---|---|
| J. RONALD TERWILLIGER, | ) |
| 8665 East Hartford Drive, Scottsdale, AZ 85255 | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Stephen Bushansky ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Starwood Waypoint Homes ("SFR" or the "Company") against SFR, the members of SFR's Board of Trustees (the "Board" or the "Individual Defendants"), and Starwood Waypoint Homes Partnership, L.P. ("SFR LP," and together with SFR, "Starwood") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction announced on August 10, 2017, pursuant to which Starwood and Invitation Homes Inc. ("INVH"), and their respective affiliates, will combine in a merger-of-equals (the "Proposed Transaction").

2. On August 9, 2017, SFR and SFR LP entered into an agreement and plan of merger (the "Merger Agreement") with INVH, Invitation Homes Operating Partnership LP ("INVH LP"), and IH Merger Sub, LLC ("REIT Merger Sub," and together with INVH and INVH LP, "Invitation Homes"). Pursuant to the terms of the Merger Agreement, each common share of SFR will be converted into the right to receive 1.6140 newly issued shares of common

stock of INVH.

3. In connection with the Proposed Transaction, SFR will merge with and into REIT Merger Sub, with REIT Merger Sub surviving as a wholly-owned subsidiary of INVH, and as promptly as practicable thereafter, SFR LP will merge with and into INVH LP, with INVH LP surviving as a subsidiary of INVH.  Upon completion of the mergers, the continuing INVH stockholders are expected to own approximately 59.1% of the combined company's fully diluted equity, and the former SFR common shareholders are expected to own the remaining 40.9%.

4. On September 20, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC in connection with the Proposed Transaction.  The Registration Statement, which recommends that Starwood stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Starwood's and INVH's financial projections, relied upon by Starwood's financial advisor Evercore Group L.L.C. ("Evercore") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Evercore; and (iii) potential conflicts of interest faced by Evercore and Starwood's additional financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley").  The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act, as Starwood stockholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

5. In short, unless remedied, Starwood's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are

cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Starwood is incorporated in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Starwood.

10. SFR is a Maryland real estate investment trust and maintains its principal executive offices at 8665 East Hartford Drive, Scottsdale, AZ 85255. The Company's common stock is traded on the NYSE under the ticker symbol "SFR."

11. SFR LP is a Delaware limited partnership. A wholly-owned subsidiary of SFR is the sole general partner of SFR LP, and SFR conducts substantially all of its business through SFR LP. SFR owns 95.6% of the outstanding SFR LP units as of June 30, 2017.

12. Defendant Frederick C. Tuomi ("Tuomi") has served as Chief Executive Officer ("CEO") of the Company and has been a trustee of the Board since March 2017.

13. Defendant Barry S. Sternlicht ("Sternlicht") has served as one of the Company's two Co-Chairmen of the Board since January 2016. From 2012 until January 2016, defendant Sternlicht served as the Chairman of the board of trustees of the Company's predecessor company, Starwood Waypoint Residential Trust.

14. Defendant Thomas M. Bowers ("Bowers") has been a trustee of the Company since 2014. Defendant Bowers previously served as the lead independent trustee of Starwood Waypoint Residential Trust.

15. Defendant Richard D. Bronson ("Bronson") has been a trustee of the Company since January 2016. Defendant Bronson previously served as a member of the Starwood Waypoint Residential Trust board from January 2014 to January 2016.

16. Defendant Michael D. Fascitelli ("Fascitelli") has been a trustee of the Company since January 2016. Defendant Fascitelli previously served as a member of the Starwood Waypoint Residential Trust board from January 2014 to January 2016.

17. Defendant Renee Lewis Glover ("Glover") has been a trustee of the Company since February 2017.

18. Defendant Jeffrey E. Kelter ("Kelter") has been a trustee of the Company since January 2016. Defendant Kelter previously served as a member of the Starwood Waypoint Residential Trust board from January 2014 to January 2016.

19. Defendant Thomas W. Knapp ("Knapp") has been a trustee of the Company since January 2016.

20. Defendant J. Ronald Terwilliger ("Terwilliger") has been a trustee of the Company since January 2016.

21. Defendants referenced in paragraphs 12 to 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22. INVH is a Maryland corporation with its principal executive offices located at 1717 Main Street, Suite 2000, Dallas, Texas 75201.

23. INVH LP is a Delaware limited partnership and is wholly-owned by INVH.

24. REIT Merger Sub is a Delaware limited liability company and a wholly-owned subsidiary of INVH.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Starwood common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of

September 14, 2017, there were 128,307,181 common shares of beneficial interest of the Company. All members of the Class may be identified from records maintained by Starwood or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

**Company Background and Strong Financial Outlook**

32. Starwood is an internally managed Maryland real estate investment trust that has elected to be taxed as a REIT under the Internal Revenue Code. The Company began operations in March 2012 primarily to acquire, renovate, lease and manage residential assets in select markets throughout the country. Starwood's primary strategy is to acquire single-family rental properties through a variety of channels, renovate these properties to the extent necessary and lease them to qualified residents. As of June 30, 2017, Starwood's portfolio consisted of 34,379 owned properties, including 33,571 rental properties and 808 properties that Starwood does not intend to hold for the long term.

33. As of December 31, 2016, the Company maintained 24 regional offices and resident service centers. The regional offices house Starwood's regional managers and construction teams, and, if applicable, its local acquisition, marketing and leasing, property management, and repairs and maintenance teams. The resident service centers serve as localized customer-facing offices aimed at ensuring resident satisfaction and retention, as well as to integrate all local operations.

34. On September 21, 2015, Starwood and Colony American Homes, Inc. ("CAH") announced the signing of a merger agreement to combine the two companies in a stock-for-stock transaction. In connection with the transaction, Starwood internalized its former external manager, SWAY Management LLC. The merger and the manager internalization were completed on January 5, 2016. Under the merger agreement, CAH shareholders received an aggregate of 64,869,526 of Starwood's common shares in exchange for all shares of CAH. Upon completion of the transaction, Starwood's existing shareholders and the former owner of SWAY

Management LLC owned approximately 41% of Starwood's common shares, while former CAH shareholders owned approximately 59% of Starwood's common shares.

35. On August 9, 2017, Starwood issued a press release announcing its second quarter of 2017 financial results. For the quarter, total revenues were $154.4 million, a 7.3% increase from $143.8 million in the second quarter of 2016. Core net operating income margin for Same Home properties increased to 64%, compared to 62.6% in the second quarter of 2016. Commenting on the quarter's favorable financial results, defendant Tuomi stated:

> Starwood Waypoint Homes had a very active second quarter, investing nearly $1 billion in asset acquisitions, highlighted by our GI Portfolio purchase of 3,106 single-family homes. This portfolio was an exceptional opportunity for Starwood Waypoint to further deepen its footprint within existing markets, including high-growth California. . . . We delivered another strong-performing quarter with Same Home NOI growth of 8.1% while achieving a Same Home Core Net Operating Income margin of 64.6%. The 2017 leasing season is demonstrating continued favorable fundamentals which positions us well for the balance of the year.

During the second quarter of 2017, Starwood acquired 3,661 homes, for a total investment of approximately $959.0 million. The Company sold 999 single-family rental homes, for a total of $116.2 million in gross sale proceeds, resulting in a gain of approximately $7.8 million.

**The Proposed Transaction**

36. On August 10, 2017, Starwood and Invitation Homes issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

> DALLAS & SCOTTSDALE, Ariz -- Invitation Homes (NYSE: INVH) and Starwood Waypoint Homes (NYSE: SFR), two leading owners and operators of single-family rental homes in the United States, announced today the signing of a definitive agreement to combine in a 100 percent stock-for-stock merger-of-equals transaction. The combined company, which will operate under the name "Invitation Homes," will bring together the best practices, technology, and personnel from both firms to create the premier single-family rental company in the United States. The combination of these two industry innovators will produce a company with an unparalleled ability to deliver enhanced service offerings to residents more efficiently, continue investing in local communities, and generate substantial value for stockholders.

Under the terms of the agreement, each Starwood Waypoint Homes share will be converted into 1.614 Invitation Homes shares, based on a fixed exchange ratio. The all-stock merger is intended to be a tax-free transaction. Upon the closing of the transaction, Invitation Homes stockholders will own approximately 59 percent of the combined company's stock, while Starwood Waypoint Homes stockholders will own approximately 41 percent of the combined company's stock. Based on the closing prices of Starwood Waypoint Homes common shares and Invitation Homes common stock on August 9, 2017, the equity market capitalization of the combined company would be approximately $11 billion and the total enterprise value (including debt) would be approximately $20 billion. The combined company's shares are expected to continue trading on the New York Stock Exchange under the ticker symbol for Invitation Homes (NYSE: INVH).

This strategic transaction combines two companies with highly complementary capabilities, including Invitation Homes' industry-leading approach to customer service and asset-management expertise, and Starwood Waypoint Homes' industry-leading technology. In addition, the current Starwood Waypoint Homes CEO Fred Tuomi, who will become CEO of the combined company, has experience successfully integrating mergers of large-scale, single-family rental companies. Overall, the two companies have invested nearly $2 billion, an average of approximately $22,000 per home, in renovations and maintenance, improving resident experience and driving economic growth and job creation in local communities.

* * *

**Management, Governance and Corporate Headquarters**

Upon completion of the transaction, Fred Tuomi, Chief Executive Officer of Starwood Waypoint Homes, will become CEO of Invitation Homes; Ernie Freedman, Chief Financial Officer of Invitation Homes, will remain CFO; Charles Young, Chief Operating Officer of Starwood Waypoint Homes, will become COO; and Dallas Tanner, Chief Investment Officer of Invitation Homes, will remain CIO. The combined company will be headquartered in Dallas, Texas, and will maintain a presence in Scottsdale, Arizona.

**Insiders' Interests in the Proposed Transaction**

37.     Starwood and Invitation Homes insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Starwood's public stockholders.

38. Notably, according to the press release announcing the Proposed Transaction and the Registration Statement filed with the SEC, multiple Starwood executive officers have secured positions for themselves following consummation of the mergers. According to the press release, "[u]pon completion of the transaction, Fred Tuomi, Chief Executive Officer of Starwood Waypoint Homes, will become CEO of Invitation Homes; . . . Charles Young, Chief Operating Officer of Starwood Waypoint Homes, will become COO. . . ." Additionally, according to the Registration Statement, "[o]n September 19, 2017 and in contemplation of the Mergers, INVH entered into a binding term sheet (the "CIO Term Sheet") with Arik Prawer, SFR's Chief Financial Officer, to serve as Chief Integration Officer of the Combined Company, subject to and commencing upon the consummation of the Mergers." Registration Statement at 87.

39. Moreover, if they are terminated in connection with the Proposed Transaction, Starwood's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash (1) | Equity (2) | Pension and Non-Qualified Deferred Compensation (3) | Perquisites and Benefits (4) | Tax Reimbursement (5) | Other (6) | Total |
|---|---|---|---|---|---|---|---|
| Frederick C. Tuomi | $ 2,646,042 | $ 9,082,283 | — | $ 12,000 | — | $ 43,874 | $ 11,784,199 |
| Arik Prawer | $ 1,153,403 | $ 3,725,154 | — | $ 12,000 | — | $ 15,669 | $ 4,906,226 |
| Charles D. Young | $ 1,153,403 | $ 3,725,154 | — | $ 12,000 | — | $ 15,669 | $ 4,906,226 |
| Ryan A. Berry | $ 1,017,708 | $ 1,637,189 | — | $ 12,000 | — | $ 10,028 | $ 2,676,925 |
| Justin M. Iannacone | — | $ 1,367,604 | — | — | — | — | $ 1,367,604 |
| Douglas R. Brien (7) | — | — | — | — | — | — | — |
| Nina A. Tran (8) | — | — | — | — | — | — | — |

**The Registration Statement Contains Material Misstatements or Omissions**

40. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Starwood's stockholders. The Registration

11

Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

41. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Starwood's and INVH's financial projections, relied upon by Starwood's financial advisor Evercore in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Evercore; and (iii) potential conflicts of interest faced by Evercore and Morgan Stanley.

*Material Omissions Concerning Starwood's and INVH's Financial Projections*

42. The Registration Statement omits material information regarding Starwood's and INVH's financial projections. The Registration Statement provides:

> Evercore performed a discounted cash flow analysis of SFR to calculate a range of estimated present values as of December 31, 2017 of the standalone unlevered, after-tax free cash flows that SFR was projected to generate from January 1, 2018 through December 31, 2021, calculated to be $312 million, $333 million, $353 million and $374 million for the calendar years 2018, 2019, 2020 and 2021, respectively, using information contained in the SFR Management Projections. The standalone unlevered, after-tax free cash flows that SFR is projected to generate from January 1, 2018 through December 31, 2021 were calculated by deducting from the forecasted earnings before interest, taxes, depreciation and amortization ("EBITDA") for each calendar year as reflected in the SFR Management Projections capital expenditures, leasing commissions, stock based compensation and taxes, all as reflected in the SFR Management Projections.

Registration Statement at 69. However, the Registration Statement fails to disclose the line item projections underlying Starwood's unlevered, after-tax free cash flows, including: (i) capital expenditures; (ii) leasing commissions; (iii) stock based compensation; and (iv) taxes.

43. Similarly, the Registration Statement states:

> Evercore performed a discounted cash flow analysis of INVH to calculate a range of estimated present values as of December 31, 2017 of the standalone unlevered, after-tax free cash flows that INVH was projected to generate from January 1,

12

>2018 through December 31, 2021, calculated to be $506 million, $558 million, $591 million and $623 million for the calendar years 2018, 2019, 2020 and 2021, respectively, using information contained in the INVH Management Projections. The standalone unlevered, after-tax free cash flows that INVH is projected to generate from January 1, 2018 through December 31, 2021 were calculated by deducting from the forecasted EBITDA for each calendar year as reflected in the INVH Management Projections capital expenditures and stock based compensation, both as reflected in the INVH Management Projections.

Registration Statement at 70. However, the Registration Statement fails to disclose the line item projections underlying INVH's unlevered, after-tax free cash flows, including: (i) capital expenditures; and (ii) stock based compensation.

44. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. Additionally, with respect to Starwood's financial projections, the Registration Statement discloses only Company projections for non-GAAP (generally accepted accounting principles) metrics including net operating income ("NOI"), adjusted EBITDA, core funds from operations ("Core FFO"), adjusted core funds from operations ("Core AFFO"), and unlevered free cash flows, for years 2017 through 2021, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP. The omission of the aforementioned line item projections renders the non-GAAP projections included in the Registration Statement materially misleading and incomplete.

46. Similarly, with respect to INVH's financial projections, the Registration

Statement discloses only INVH's projections for non-GAAP metrics, including NOI, adjusted EBITDA, Core FFO, adjusted funds from operations ("AFFO"), and unlevered free cash flows, for years 2017 through 2021, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

47. The importance of reconciling between GAAP and non-GAAP financial measures has long been widely acknowledged. The SEC adopted "Regulation G" in 2003, in response to the mandate set forth in Section 401(b) of the Sarbanes-Oxley Act that rules be enacted to regulate the use of pro forma financial information. Regulation G prohibits the use of non-GAAP financial measures outside of SEC filings unless they are accompanied by the most directly comparable GAAP accounting measure, as well as a reconciliation of the two. Such reconciliations were deemed necessary to address the proliferation of non-GAAP financial measures lacking a uniform definition and therefore carrying the risk of misleading investors.

*Material Omissions Concerning Evercore's Financial Analyses*

48. With respect to Evercore's *Discounted Cash Flow Analyses* of Starwood and INVH, the Registration Statement fails to disclose: (i) the line item projections underlying each of Starwood's and INVH's expected unlevered, after-tax free cash flows for years 2018 through 2021 as used by Evercore in its analyses; and (ii) the actual inputs and assumptions underlying the discount rate ranges selected by Evercore in its analyses.

49. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Opinion of SFR's Financial Advisor;" and (ii) "Certain SFR Unaudited

Prospective Financial Information."

*Material Omissions Concerning Evercore's and Morgan Stanley's Potential Conflicts of Interest*

50. The Registration Statement omits material information relating to potential conflicts of interest of Starwood's financial advisors. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

51. The Registration Statement fails to disclose accurately the amount of compensation that Evercore is expected to earn in connection with the Proposed Transaction. Specifically, the Registration Statement states that, pursuant to its engagement letter, "Evercore is entitled to receive an opinion fee of $2.0 million, which Evercore earned upon delivery of its fairness opinion to the SFR Board. Such opinion fee is fully creditable against a success fee of $2.0 million, which Evercore will earn upon the consummation of the Mergers." Registration Statement at 76. This must be clarified. If the $2 million opinion fee was creditable against a $2 million success fee, Evercore would be entitled to no additional compensation upon the successful completion of the Proposed Transaction (and therefore obviating the need for a success fee). Accordingly, defendants must correct this disclosure regarding Evercore's expected compensation in connection with the Proposed Transaction.

52. Additionally, the Registration Statement provides that "Evercore may receive a discretionary fee, which amount, if any, shall be determined by SFR in its sole discretion." Registration Statement at 76. However, the Registration Statement fails to disclose under what circumstances this "discretionary fee" may be paid, as well as the maximum amount of

15

this discretionary fee.

53. Further, the Registration Statement indicates that the Board engaged Morgan Stanley in connection with the Proposed Transaction. The Registration Statement, however, fails to disclose the terms of the engagement letter that the Company entered into with Morgan Stanley, including the amount of compensation that Morgan Stanley earned in connection with its services.

54. Notably, at an August 1, 2017 Board meeting, the Registration Statement discloses that "the SFR Board discussed Morgan Stanley's historical relationships with INVH, Blackstone, the Blackstone Stockholders and certain of their respective affiliates" (Registration Statement at 47), yet fails to disclose any details surrounding Morgan Stanley's historical relationships with these parties, including the nature and timing of the services that Morgan Stanley provided, as well as the amount of compensation earned by Morgan Stanley or its affiliates in connection with those services.

55. The Registration Statement also fails to disclose the reason the Board determined it was necessary to engage Evercore as a second financial advisor to provide a fairness opinion, including whether Evercore was hired as a result of a perceived conflict of interest on the part of Morgan Stanley.

56. Defendants' failure to provide Starwood stockholders with the foregoing material information renders the statements in the "Background of the Mergers" and "Opinion of SFR's Financial Advisor" sections of the Registration Statement false and/or materially misleading and constitutes a violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration

Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

57. Plaintiff repeats all previous allegations as if set forth in full.

58. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

59. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. The Registration Statement misrepresented and/or omitted material facts, including material information about the financial analyses performed by the Company's financial advisor, potential conflicts of interest faced by the Company's financial advisor, and the actual intrinsic standalone value of the Company. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

60. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to

vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

61. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

62. Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

63. Plaintiff repeats all previous allegations as if set forth in full.

64. The Individual Defendants acted as controlling persons of Starwood within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Starwood and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

67. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Starwood, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Starwood stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 4, 2017           **LEVI & KORSINSKY LLP**

/s/ Donald J. Enright
Donald J. Enright (Bar No. 13551)
Brian D. Stewart (Bar No. 19906)
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com
etripodi@zlk.com

**OF COUNSEL:**

*Attorneys for Plaintiff*

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010